[Crim. No. 20582. First Dist., Div. Three. Mar. 4, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
EZEKIEL BENSON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and David Lew, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Herbert F. Wilkinson and Nancy Stewart, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

STERN, J.*—Ezekiel Benson, convicted of two counts of robbery, violations of Penal Code section 211, and the allegation that he had been armed with a firearm in the commission of each, having been found true, was sentenced to prison for a period of eight years—four years (the upper term) for the principal term, one year for an arming enhancement, two years for prior convictions, and one year on the subordinate term.

He contends that the trial court erred by permitting evidence of an uncharged prior offense (robbery), in erroneously defining reasonable doubt for the jury, in failing to instruct the jury as to the requisite intent for aiding and abetting, in sentencing him to the upper term, and in failing to obtain an express waiver of his *Yurko* rights (*In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561]) before accepting an admission of four prior convictions.

1. *The Trial Court Did Not Abuse Its Discretion in Admitting Evidence of an Uncharged Prior Offense.*

The robbery for which appellant was convicted took place at approximately 1:30 p.m. on October 9, 1978, at a drug store in San Leandro. Prosecution evidence disclosed that two men, Patrick and Dixon, entered the store and robbed it. After running from the store, they entered a car parked nearby, which car immediately left the scene. The car was seen and described by a witness and the description given to the police.

*Assigned by the Chairperson of the Judicial Council.

Shortly thereafter, the car was seen by Officer Oliver being driven by appellant with Patrick and Dixon as passengers. When Oliver started to follow the car, it accelerated. Oliver activated his red light and siren. A number of other police officers took up the chase of the pursued car which reached speeds of 60-70 miles per hour. The chase came to a halt when the driver of the pursued car lost control of it and came to a stop. Appellant ran from the car but was apprehended a short distance from the stopped car. When apprehended, he gave his name as "Larry Nolen," told the police he hadn't been driving the car that day and didn't know the names of the other occupants.

Appellant testified that Patrick and Dixon had jumped in his car after leaving the drug store, told him to drive and that Patrick had a gun. He was not aware at that time that a robbery of the store had taken place.

The evidence of the uncharged prior offense was admitted over objection in the following frame of reference.

A prosecution witness, Sotelo, testified that three days before the instant offense, appellant and Patrick robbed her in the pharmacy where she worked. This testimony was elicited in the following sequence. Appellant had testified that it had been a couple of years before the day of the instant robbery since he had seen Patrick, that when Patrick entered the car, he hadn't recognized him as a person he had seen before and didn't recognize him until he saw him at the police station after apprehension.

On rebuttal, an officer, Whitley, testified that he had stopped appellant on September 30, 1978, driving a car which had as a passenger a man who identified himself as Homer Patrick. Further rebuttal was provided in the testimony of witness Wiggins, who testified that at 1:45 p.m. on October 6, 1978, she had seen two men identified as appellant and Patrick get into a car similar to the one driven by appellant on October 9.

On surrebuttal, the defense produced evidence of a court appearance which appellant was scheduled to make at 2 p.m. on October 6, 1978. After establishing that in fact such an appearance was calendared for that time, appellant testified that he had been in court pursuant to such schedule at 1:30 on October 6, 1978, had not been with Patrick that

day, and had not seen Patrick for at least a few years before October 9, 1978.

An offer of proof was then made by the prosecution that Sotelo would testify that she was held up at gun point by appellant and Patrick in a pharmacy where she was clerking at 1:30 p.m. in Oakland. This Sotelo testimony was to include a detailed description of what took place during the robbery, including facts which would describe the opportunities which Sotelo had for observing the two men involved in this incident. The robbery of October 6 in which Sotelo was a victim is the prior uncharged offense to which objection was made and overruled. We must determine whether or not this ruling was error.

The trial judge, in considering the question of the admissibility of this evidence, described the issue as follows: "It appears to the Court that the crucial question in this trial before the jury is obviously Mr. Benson's knowledge and association with Mr. Patrick prior to the day of this offense in which the evidence shows that Mr. Patrick got into Mr. Benson's car, which Mr. Benson does not deny, and, in fact, corroborates. *The question of the defendant's credibility in that regard is crucial . . . .*" (Italics added.)

That the trial judge was not overstating the importance of establishing appellant's credibility with regard to the circumstances surrounding his acquaintance with Patrick is self-evident. A linchpin in appellant's defense was his assertion that he had no prior knowledge of the intentions of Patrick and Dixon when they entered the drug store. To support this assertion, appellant stated that he had not seen Patrick for a number of years before October 9, 1978. If this statement were credible it would have provided strong evidence favoring appellant's defense. To counter this assertion, the prosecution introduced evidence through witnesses, Whitley and Wiggins, that appellant and Patrick had been seen together a few days before October 9. To rebut Wiggins' testimony, the defense set up an alibi, contending that appellant was in court during the time he was allegedly seen by Wiggins. It was not until this point that the prosecution sought to bring in the testimony of Sotelo. This testimony was clearly relevant and admissible since it contradicted the testimony of appellant. (*People* v. *Lavergne* (1971) 4 Cal.3d 735, 742 [94 Cal.Rptr. 405, 484 P.2d 77].) Appellant concedes as much since appellant, in arguing against the admissibility of the evidence in question, resorts to an attempt to sanitize the evidence by persuading the trial court to permit Sotelo to testify to the fact that she

had seen appellant and Patrick together but not to state the circumstances under which she had seen them. This, in effect, was what the court had done with Wiggins' testimony, Wiggins having seen appellant and Patrick run from Sotelo's store on October 6.

It was at this point that the court had to make its decision. It had to balance, under Evidence Code section 352, the probative value of this evidence against its prejudicial effect. The evidence of the uncharged offense was not being used to establish that the accused had a propensity or disposition to commit the crime charged and that this propensity was circumstantial proof that he had behaved similarly on the instant occasion. It was being offered to rebut a position taken by appellant that could have been determinative of the outcome of the case, namely whether or not Patrick and appellant had been together a few days before the instant offense took place. It was offered to establish the circumstances under which Sotelo saw appellant and Patrick together, circumstances which could have been highly probative in establishing Sotelo's credibility. Being face to face with individuals, one of whom is pointing a gun at you and both of whom are robbing you, are factors a jury would find significant in determining whether an identification was worthy of belief or not. ■ "[H]ow much 'probative value' proffered evidence has depends upon the extent to which it tends to prove an issue by logic and reasonable inference (degree of relevancy), the importance of the issue to the case (degree of materiality), and the necessity of proving the issue by means of this particular piece of evidence (degree of necessity)." (*People* v. *Delgado* (1973) 32 Cal.App.3d 242, 249 [108 Cal.Rptr. 399]; overruled on another point in *People* v. *Rist* (1976) 16 Cal.3d 211, 221 [127 Cal.Rptr. 457, 545 P.2d 833].)

■ The evidence here was relevant, important and necessary. It tended to prove the issue of whether or not appellant had had any contact with Patrick shortly before October 9, 1978 by "logic and reasonable inference."

The trial court clearly had in mind the dangers inherent in admitting evidence of an uncharged prior offense. It weighed these dangers against the probative value of the evidence and concluded that the evidence should be admitted. Under the evidence presented, we cannot conclude that it was in error when it did so. The admissibility of this evidence lies primarily within the discretion of the trial judge who determines whether its probative value outweighs its prejudicial effect (*People* v. *Milan* (1975) 9 Cal.3d 185 [107 Cal.Rptr. 68, 57 P.2d 956];

Evid. Code, § 352) and we will not interfere with the exercise of discretion which permitted the introduction of the evidence in question. It is true that in *People* v. *Stanley* (1967) 67 Cal.2d 812, 818-819 [63 Cal.Rptr. 825, 433 P.2d 913], the court held that "While probative value and prejudice are not subject to absolute quantitative measurement, some of the pertinent guidelines may be identified. On the issue of probative value, materiality and necessity are important. The court should not permit the admission of other crimes until it has ascertained that the evidence tends logically and by reasonable inference to prove the issue upon which it is offered, that it is offered on an issue material to the prosecution's case, and is not merely cumulative." (Fns. omitted.) The evidence here was introduced to prove a collateral, disputed issue, namely, to impeach a witness on a collateral matter and it was cumulative in that the witness Wiggins had testified to seeing appellant and Patrick together. Despite this the circumstances under which Sotelo made the identification were dramatically more persuasive of her credibility in this respect than were the circumstances under which Wiggins made her identification and by which her credibility was measured. While the issue may be defined as collateral rather than a main issue, in the context of the evidence in this case, it was an issue of importance since it directly bore upon a main issue, namely, whether or not appellant was aware of the intentions of Patrick when he entered the store.

2. ■ *The Giving of a Jury Instruction Based on Former CALJIC No. 22 (rev.) Was Harmless.*

Appellant relies on *People* v. *Brigham* (1979) 25 Cal.3d 283 [157 Cal.Rptr. 905, 599 P.2d 100], in contending that prejudicial error was committed by the trial court by virtue of having instructed the jury in the language of former CALJIC No. 22 (rev.).[1] This instruction was disapproved in *Brigham*, the court holding that it "may allow a juror to conclude that he or she could return a guilty verdict based on a strong and convincing belief which is something short of having been 'reasonably persuaded to a near certainty.'" (*Id.*, at p. 291.) This holding was made retroactive by the *Brigham* decision. Nevertheless, the error in the giving of the instruction must be considered harmless in view of the

---

[1]The instruction given to the jury reads as follows: "The law does not require demonstration or that degree of proof which, excluding all possibilities of error produces absolute certainty, for such degree of proof is rarely possible. Moral certainty only is required, which is that degree of proof which produces conviction in an unprejudiced mind."

fact that the court, in addition, gave CALJIC No. 2.90, slightly modified, which correctly set forth the definition of reasonable doubt[2] and that "the instructions were to be considered as a whole." Furthermore, the evidence against appellant with respect to his behavior after the actual robbery gives overwhelming testimony of his involvement.

He had driven two companions to a drug store robbery which ended up in a high speed chase in an attempt to evade the police. When Dixon and Patrick, after the robbery, came back to the car he was driving, he drove off at a moderate speed, which picked up increasingly when the police began following the car.

When Officer Oliver pulled up next to his car, appellant made no attempt to signal him. Appellant ignored the red light and siren and instead drove faster (up to 70 miles per hour on city streets), running stop signs in the process. The car came to a stop only when appellant lost control.

Once the car did come to a stop, appellant immediately fled the scene, as did his two companions. Appellant stopped running only when Officer Johnston confronted him with a weapon.

Appellant then gave a false name to the police. He denied that he had been driving the car or that he knew the names of his companions which was contradicted by his own testimony thereafter. There is no reasonable probability that a result more favorable to appellant would have been reached in the absence of *Brigham* error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) In *People* v. *Brigham, supra*, 25 Cal.3d at page 292, the Supreme Court held that the error in giving former CALJIC No. 22 (rev.) was to be measured by the test laid down in *Watson*.

---

[2]The jury was instructed that: "Concerning reasonable doubt, the defendant in a criminal action is presumed to be innocent until the contrary is proven, and in the case of a reasonable doubt, whether his guilt is satisfactorily shown, he is entitled to take an acquittal. This presumption places [*sic*] upon the people the burden of proving him guilty beyond a reasonable doubt is defined as follows:

"It is not a mere possible doubt, because [everything] relating to human affairs and depending upon moral evidence is open to some possible or imaginary gaps.

"It is that state of a case which after the entire comparison and consideration of the—of all the evidence leaves the mind of the jury in that condition, that they cannot say they feel an abiding [*sic*] conviction to a moral certainty of the truth of the charge."

3. *The Instruction Given on Aiding and Abetting Did Not Constitute Reversible Error.*

■ The court instructed the jury[3] in conformity with the current version of CALJIC No. 3.01. Appellant relies on *People v. Yarber* (1979) 90 Cal.App.3d 895 [153 Cal.Rptr. 875] in pointing out that the instruction as given did not include the concept that there must be a shared intent to facilitate the commission of the offense and therefore constitutes reversible error. *Yarber* held, at page 916, that: "Intent is what must be *proved*; from a person's action with knowledge of the purpose of the perpetrator of a crime, his intent to aid the perpetrator can be *inferred*. In the absence of evidence to the contrary, the intent may be regarded as established. *But where a contrary inference is reasonable—where there is room for doubt that a person intended to aid a perpetrator—his knowledge of the perpetrator's purpose will not suffice.*" (Italics added, fn. omitted.)

This court remains convinced that intent is an element of the offense of aiding and abetting and a proper instruction has to reflect this.

The jury, pursuant to the instruction given, in finding appellant guilty as an aider and abettor, must necessarily have concluded that he knew that Patrick and Dixon intended to rob the drug store. With that premise being given, we must conclude from our analysis of the evidence heretofore set forth that there is no room for doubt that appellant *intended* to aid Patrick and Dixon. A contrary inference would not be reasonable. A shared criminal intent is the only conclusion one can come to reasonably. The next question concerning this issue is whether or not the instructional error, having removed the intent element of the crime from consideration by the jury, was harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824, 24 A.L.R.3d 1065]) as well as under the *Watson* test. (*People v. Watson, supra*, 46 Cal.2d 818.) We are satisfied

---

[3]The exact wording of the instruction was as follows: "Now, concerning principal, all persons concerned in the commission of a crime who either directly or actively committed the act construing the offense, or who with knowledge of the unlawful purpose of the perpetrator of the crime aided and abetted in its commission, or whether present or not who advised and encouraged its commission regarded by the law is a principal in the crime thus committed, and is equally guilty thereof.

"One who aids and abets—I am sorry, that doesn't apply. A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime."

that under either test it was harmless. Finally, it is argued that under the reasoning of *People v. Burres* (1980) 101 Cal.App.3d 341, 354 [161 Cal.Rptr. 593], an opinion of this court, and *People v. Hedrick* (1980) 105 Cal.App.3d 166 [164 Cal.Rptr. 169], an instructional error which removes an element of the crime from the jury's consideration is *always* reversible per se.

An element of the crime, intent, was removed from the jury's consideration by virtue of the instruction given. While intent could be reasonably inferred—and, in fact, a contrary inference, given the evidence here, would be unreasonable—the jury in this case was placed under no obligation to draw the inference. We do not agree that *Burres* and *Hedrick* compel the conclusion that the instant case requires reversal per se. These are cases in which the courts erroneously instructed the jury so that it could have concluded that a rebuttable presumption was conclusive. In *Hedrick, supra*, 105 Cal.App.3d 166, it was to the effect that intent to commit theft is presumed by failure to return a rental car after receipt of written demand and in *Burres, supra*, 101 Cal.App.3d 341, to the effect that the intent to commit a battery is presumed when an inherently dangerous act is committed with a conscious disregard of human life and safety.

We have no quarrel with the proposition that intent was an element of the crime which necessarily had to be proven beyond a reasonable doubt to justify a conviction. We are willing to accept appellant's position that the error in the instant case was of federal constitutional proportions.

Initially, we must determine whether the error was reversible measured by the *Chapman* standard, namely, was it harmless beyond a reasonable doubt. Given the evidence before us, we must say, beyond a reasonable doubt, that the error was harmless. The jury was given the issue of appellant's knowledge, if any, of the intentions of the perpetrators. They found, in the face of his denial, that he had such knowledge. The evidence to that effect was overwhelming. All of appellant's behavior, after the robbery took place, was consistent only with that conclusion. Standing ineffectually in the path of that conclusion is only appellant's denial of such knowledge. From such knowledge appellant's intent to aid the perpetrator, of necessity, must be inferred. It would fly in the face of reason for the jury to reach a contrary inference even had the jury been instructed that having the requisite intent was an element

of the crime. We conclude beyond a reasonable doubt that no result more favorable to appellant would have ensued.

Despite the above conclusion, we have to confront the issue of whether or not the error, being one of federal constitutional proportions, requires that there must be an automatic reversal of the conviction. This is the contention put forward by appellant.

In *Chapman* v. *California, supra,* 386 U.S. 18, the court had to decide whether it "should hold that denial of a federal constitutional right, no matter how unimportant, should automatically result in reversal of a conviction, without regard to whether the error is considered harmless." (At p. 20 [17 L.Ed.2d at p. 708].) It concluded that "there may be some constitutional errors which *in the setting of a particular case* are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." (At p. 22 [17 L.Ed.2d at p. 709], italics added.) When we examine the setting of this particular case, we conclude that the instructional error was both unimportant and insignificant for the same reason we have concluded that the error was "harmless beyond a reasonable doubt." (At p. 24 [17 L.Ed.2d at p. 711].) (In *People* v. *Lopez* (1981) 116 Cal.App.3d 882, 888, fn. 1 [172 Cal.Rptr. 374], a case in which *Yarber* error was the issue, Justice Gardner commented, "it is doubtful that many jurors will or have spent many hours in deep meditation over the difference between knowledge and intent.")

Distinguishing *People* v. *Burres, supra,* 101 Cal.App.3d 341, it is sufficient to point out that in *Burres* we concluded that the error was not only reversible per se but reversible because we could not say "beyond a reasonable doubt, that the error was harmless." (101 Cal.App.3d at p. 354.) In the *Hedrick* case, *supra,* 105 Cal.App.3d 166, that court likewise concluded that "we cannot say, beyond a reasonable doubt, that the error was harmless." (At p. 172.) In the factual setting of both *Burres* and *Hedrick*, therefore, it was clear that the *Yarber* error could not be defined in *Chapman* terms as "unimportant and insignificant." We conclude, therefore, that the error, while of federal constitutional proportions, does not demand reversal per se.

### 4. *The Court Properly Sentenced Appellant to the Upper Term.*

■ The trial court imposed the upper base term of imprisonment and stated its reasons for doing so in the following language:

"[T]he court imposes the aggravated term, a period of four years for the following reasons: The defendant in this case was armed with a deadly weapon and that was charged and found to be true by the jury. [¶] The victim—in this case, two victims, were particularly vulnerable. [¶] The crime appears to have been planned pursuant to Rule 421, subdivision 8, so as to indicate premeditation.

"With regard to the defendant himself, pursuant to subdivision 8, paragraph 1, the defendant has engaged in a pattern of violent conduct which indicates a serious danger to society. [¶] His prior convictions as of now are numerous and increasing in severity. He has served prior prison terms. [¶] His prior performance on probation and indeed on Federal parole as indicated by the letter of Mr. Tanaka, which he was released from on—in June of 1978, is totally unsatisfactory. And, in addition, the defendant did take the stand and at least in the opinion of the court gave false testimony."

No circumstances in mitigation were found.

Appellant contends that the court relied in sentencing him on "[t]he defendant's uncharged and unconvicted perjury" and that this reliance "clearly violates due process" and, further, that there was no factual basis to support the conclusion that the victims were particularly vulnerable.

It is not necessary to evaluate the merits of appellant's contention. Given the record before us, the error, if any, was harmless beyond a reasonable doubt. The court based its decision, with respect to the imposition of the aggravated term, upon numerous aggravating circumstances, in addition to those complained of, coupled with the absence of mitigating factors. A result more favorable to appellant cannot be conceived of in the absence of the challenged factors. (*People v. Blessing* (1979) 94 Cal.App.3d 835, 838-839 [155 Cal.Rptr. 780].)

### 5. *Appellant Is Entitled to a Limited New Trial on the Issue of His Prior Convictions.*

The Attorney General concedes that appellant is correct in contending that he was not expressly informed of the constitutional rights being relinquished by him when he admitted his four prior felony convictions as required by *In re Yurko, supra*, 10 Cal.3d 857. He is entitled to a limited new trial on that issue. (*People* v. *Green* (1977) 66 Cal.App.3d 801, 804-805 [136 Cal.Rptr. 241].)

The judgment convicting defendant of two counts of robbery is affirmed. That part of the judgment declaring the existence of defendant's four prior felony convictions is reversed. The cause is remanded to the trial court with a direction to resentence defendant after a limited new trial on the issue of the four prior convictions.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied April 1, 1982, and appellant's petition for a hearing by the Supreme Court was denied May 27, 1982.