[Crim. No. 5373. Third Dist. Jan. 19, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK A. MARCEAUX, Defendant and Appellant.

## COUNSEL

Philip P. Marskey for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Nelson P. Kempsky and Joel S. Primes, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FRIEDMAN, J.**—Defendant appeals from a judgment of imprisonment after a jury found him guilty of assault with a deadly weapon. (Pen. Code, § 245, subd. (a).) We filed an unpublished opinion in this case on December 18, 1969, then ordered a rehearing on our own motion in order to reconsider the appeal in the light of the California Supreme Court's decision in *People* v. *Hood,* 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370], which had also been filed on December 18.

Victim of the alleged assault was Bill Widrig, who was driving his pickup truck on a county road, with his wife as a passenger. Widrig was working on a nearby olive ranch. He passed defendant's residence in his pickup and stopped a short distance beyond to secure a ladder to his truck and attach a red flag. The truck was blocking the road. Defendant, who had been washing his car (a red Volkswagen) drove up, stopped behind Widrig and called out that he wanted to get through. Widrig told defendant he would be finished in a few minutes. He then heard the noise of a gunbolt opening, turned around and saw defendant holding a rifle.

Defendant pulled the bolt back, then shoved it forward to the locked position. Defendant said: "If you don't let me through right now, I will kill you." Widrig took about two minutes to complete his task, ignoring defendant. Widrig then entered his truck and drove on. He reported the incident to the sheriff's office.

Rufino Dorante testified that he was behind Widrig when he witnessed the incident. He saw defendant cock the rifle and aim it at Widrig. Either shortly before or shortly after the incident defendant had called the sheriff's office and told Sergeant Hill that there were olive pickers blocking the road and if a deputy was not sent out to remove the cars, he would "shoot somebody's head off." Two sheriff's officers went to defendant's residence. Defendant came out of the house and repeated his threat to shoot the people who kept blocking the road. The red Volkswagen was parked outside the house. The officers looked in it and saw a .22 caliber rifle in plain view. One of the officers took the rifle out of the car, removed 15 rounds from the magazine and another from the chamber.

Defendant offered no evidence. The court gave jury instructions on additional offenses, simple assault and exhibiting a firearm in a threatening manner,[1] as lesser included offenses. The jury returned a verdict of felonious assault.

█ Defendant assigns prejudicial error in the admission of testimony that, after the Widrig incident, he told two deputy sheriffs that if they didn't prevent people from blocking the road, he would shoot someone. The statements were properly admitted. Defendant's plea of not guilty had placed in issue every element of the crime against Widrig. His statements to the deputies were admissions, which tended circumstantially to prove that he had threatened Widrig. They were admissible in evidence under Evidence Code sections 351, 352 and 1220.

Defendant charges that the rifle and bullets were "unconstitutionally obtained" by the deputies and were therefore inadmissible. Although the briefs debate whether the warrantless seizure of the rifle was reasonably incidental to defendant's arrest, much of that debate is beside the point. █ The officers had reasonable cause to believe that defendant had committed an assault with the rifle. Being lawfully on the premises, they observed a rifle in the Volkswagen. There was no unconstitutional search, for the rifle was in plain view. (*People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721]; Witkin, Cal. Evidence (2d ed. 1966) § 105.) █ It is well established

---

[1]The latter offense is defined by Penal Code section 417 as follows: "Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, or any other deadly weapon whatsoever, in a rude, angry or threatening manner, or who in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor."

that officers may make a warrantless seizure of contraband which is in plain view. (*People* v. *Holloway,* 230 Cal.App.2d 834, 838-839 [41 Cal.Rptr. 325].) ■ They may seize "mere evidence" of a crime under the same circumstances which permit seizure of contraband. (*Warden Md. Penitentiary* v. *Hayden,* 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642]; *People* v. *Thayer,* 63 Cal.2d 635 [47 Cal.Rptr. 780, 408 P.2d 108].) ■ Having lawfully observed evidence of the crime for which they were arresting defendant, they could lawfully seize it.

An alternative rule which parries Fourth Amendment attack is that of self-protective seizure. ■ Officers interrogating a suspect may indulge in a protective search for weapons. (*Terry* v. *Ohio,* 392 U.S. 1, 29 [20 L.Ed.2d 889, 910, 88 S.Ct. 1770].) They may seize a firearm when the act is reasonably necessary for their own protection. (*People* v. *Cove,* 228 Cal.App.2d 466, 470-471 [39 Cal.Rptr. 535]; Witkin, *op. cit. supra,* § 104.) ■ The officers knew of defendant's aggressive propensities. Once the rifle was seen, they were under no obligation to leave it where defendant might conceivably seize it and use it against them. Removal of the ammunition was a standard safety precaution, known to all who handle firearms and who may need to transport a firearm in an automobile. (See Fish & G. Code, § 2006.)

Defendant charges his trial counsel with inadequate representation in failing to make a Fourth Amendment objection to the rifle and bullets. Defendant's trial counsel was under no obligation to make an unavailing objection. Additional claims of inadequate representation do not fulfill defendant's burden of establishing the charge as a demonstrable reality. (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].)

At this point we reach defendant's principal contention: that there is no evidence of his specific intent to injure the victim, thus that an essential element of the assault charge is unproven. When this appeal was argued, the view that specific intent to injure is an essential element of assault had direct support in *People* v. *Fanning,* 265 Cal.App.2d 729, 734 [71 Cal. Rptr. 641], as well as inferential support in other decisions. On the other hand, a substantial body of California case law had it that neither assault with a deadly weapon nor simple assault is a specific intent crime.[2]

---

[2]See cases cited *People* v. *Hood, supra,* 1 Cal.3d at pp. 452-453, fn. 4. Parallelling the cases which rejected specific intent as a necessary element of assault is the statement in *People* v. *Laya,* 123 Cal.App.2d 7, 16 [266 P.2d 157], that merely pointing a gun at another constitutes an assault with a deadly weapon, whether or not the gun is fired. Earlier decisions of intermediate appellate courts had held merely reckless conduct to be a sufficient basis for assault. (*People* v. *Peak,* 66 Cal.App.2d 894 [153 P.2d 464]; *People* v. *Corlett,* 67 Cal.App.2d 33 [153 P.2d 595, 964]; *People* v. *Bumbaugh,* 48 Cal.App.2d 791 [120 P.2d 703].) The latter were expressly disapproved in *People* v. *Carmen,* 36 Cal.2d 768, at pages 775-776 [228 P.2d 281].

In *People* v. *Hood, supra,* the Supreme Court considered the effect of intoxication on the crime of assault with a deadly weapon. According to the conventional California approach, evidence of intoxication may negate the state of mind called specific intent when that intent is an element in the crime, but is not admissible to excuse offenses requiring only general criminal intent. (See Pen. Code, § 22.) As to assault, the *Hood* opinion rejected the conventional general-specific intent dichotomy, viewing the distinction as verbal rather than real. (*People* v. *Hood, supra,* 1 Cal.3d at pp. 456, 457-458.) It observed that the statutory definition of an assault as an "attempt . . . to commit a violent injury" suggests goal-directed, intentional behavior. (*Id.* at p. 457.)[3] Referring to *People* v. *Carmen, supra,* 36 Cal.2d 768, the court noted the paradoxical character of "attempt" to injure without "intent" to injure.[4] The court then voiced *dicta,* suggesting strongly that a requisite of assault is intent to commit a battery.[5] The *Hood* opinion then concluded that the policy permitting the intoxication defense is not properly applied to the simple behavior involved in assault, specifically disapproving *Fanning, supra.*

Although the role of intoxication was the specific concern of *Hood,* its delineation of the state of mind involved in assaults has an impact on other aspects of assault trials, notably, the essential elements of the prosecution's burden of proof and the formulation of jury instructions. In the *Hood* opinion the court expressly discerned a lack of any need to "reconsider our position in [*People* v.] *Carmen* that an assault cannot be predicated merely on reckless conduct." (*Id.* at p. 457.) If the volitional factor requisite to assault precludes a conviction predicated on reckless behavior, it also forecloses a conviction resting upon intent only to frighten. ▇ Since assault requires proof of an intent to commit battery (injury), a conviction may not be grounded upon an intent only to frighten.

▇ Existence of intent to injure is a jury question; the intent may be implied from the defendant's actions, that is, it may be proved circum-

---

[3] Penal Code, section 240, provides: "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

[4] In *Carmen* (36 Cal.2d at p. 775) the court had remarked that "one could not very well 'attempt' or try to 'commit' an injury on the person of another if he had no intent to cause any injury to such other person."

[5] The *Hood* opinion states: "Since the definitions of both specific intent and general intent cover the requisite intent to commit a battery, the decision whether or not to give effect to evidence of intoxication must rest on other considerations." (*Id.* at p. 458.)

Again, the *Hood* opinion observes: "The difference in mental activity between formulating an intent to commit a battery and formulating an intent to commit a battery for the purpose of raping or killing may be slight, but it is sufficient to justify drawing a line between them and considering evidence of intoxication in the one case and disregarding it in the other." (*Id.* at p. 458.)

stantially. (See *People* v. *Carmen, supra,* 36 Cal.2d at p. 776.) We need not decide whether there was substantial evidence of defendant's intent to injure Widrig or to do anything more than frighten him. ■■■ The evidence of intent to commit injury is at least equivocal. This state of the evidence necessitated explicit jury instructions on the question of the state of mind requisite to an assault conviction. ■■■ The trial court gave the definitions of assault found in California Jury Instructions Criminal, Instructions Numbers 602 and 604.[6] Although these instructions seemed proper at the time of trial, they must be reappraised in the light of *People* v. *Hood, supra.*

These instructions corresponded to the letter of the law, for they defined the crime of assault by the phrase "attempt . . . to commit a violent injury." They failed, nonetheless, to inform the jury in clear terms that an assault conviction cannot be predicated upon an intent only to frighten. As we have seen, the statutory phraseology had been the source of juridical disagreement for many decades. A number of California jurists had discerned in this language a statutory purpose to embrace not only attempts to injure, but conduct which was merely reckless or designed to frighten. Lay jurors would be prone to the same disagreement, at least the same degree of uncertainty and liable to indulge in the same erroneous extrapolation. Whatever their sufficiency where the defendant's conduct inflicts physical injury, these instructions are misleading where there is substantial

---

[6]"The court's instructions defining "assault" read as follows:

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another.

"The term 'violent injury', as used in this definition, does not require that the injury be a severe one, but includes any wrongful act committed by means of physical force against the person of another even though it entails no pain and leaves no mark.

"To constitute an assault, it is not necessary that any actual injury be inflicted, but if an injury is inflicted, that fact may be considered by the jury, in connection with all other evidence, in determining whether an assault has been committed and, if so, the nature of the assault." (CALJIC 602.)

"An assault with a deadly weapon is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another with a deadly weapon.

"A deadly weapon is any object, instrument or weapon which is used in such a manner as to be capable of producing, and likely to produce, death or great bodily injury.

"To constitute an assault with a deadly weapon, actual injury need not be caused. The characteristic and necessary elements of the offense are the unlawful attempt, with criminal intent, to commit a violent injury upon the person of another, the use of a deadly weapon in that attempt, and the then present ability to accomplish the injury. If an injury is inflicted, that fact may be considered by the jury, in connection with all the evidence, in determining the means used, the manner in which the injury was inflicted, and the type of offense committed." (CALJIC 604.)

evidence of an intent only to frighten. In view of the precarious state of the evidence of intent, the instruction was prejudicial.

Judgment reversed.

Pierce, P. J., and Janes, J., concurred.

A petition for a rehearing was denied February 13, 1970, and respondent's petition for a hearing by the Supreme Court was denied March 19, 1970. McComb, J., and Mosk, J., were of the opinion that the petition should be granted.