[No. F002017. Fifth Dist., Aug. 28, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ANANCIO GARCIA, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Parts II-A, II-B, II-D, IV-A, IV-B and V are not published, as they do not meet the
standards for publication contained in rule 976(b), California Rules of Court.

**COUNSEL**

Barbara Michel, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and J. Robert Jibson, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**ANDREEN, J.**—The defendant appeals from a judgment of imprisonment following conviction by jury trial of attempted burglary (Pen. Code, §§ 664, 459) and assault with a deadly weapon upon a peace officer (Pen. Code, § 245, subd. (b)). We affirm.

## I. FACTS

Sometime after midnight on September 27, 1981, four Fresno police officers converged upon the Fresno Goodwill store in response to a signal from a silent alarm. One of the officers, Teresa Snapp, observed a suspect several feet away who was hunched over near the door to the building. The door opened into a fenced yard. The fence was a six-foot chain link fence with barbed wire on top, making it approximately seven and one-half feet high. The fence was between the suspect and the officer.

Upon seeing the suspect, Officer Snapp stepped back from the fence and positioned herself behind a building and out of view. After communicating with the other officers in order to coordinate their efforts, Snapp again approached the fence, to a distance of about one or two feet. The defendant (probably not the suspect who was observed next to the door) was within a foot of the fence, with the officer about three, perhaps four, feet from the defendant.[1] She directed the beam of her flashlight toward him. Snapp testified that defendant responded by asking, "What's wrong, Officer?" She further testified that she then identified herself as a police officer and told him to put his hands up so she could see them. Defendant denied any conversation took place. The flashlight beam was either on defendant's throat or directly in his face.

Snapp saw defendant's shoulder move and heard an object come towards her and go over the fence and over her head. The object was later determined to be a tire iron. It missed hitting Snapp in the head by about two to three feet. The tire iron landed directly behind her, about six feet from her person. Immediately after throwing the iron, defendant fled. The other officers then apprehended defendant and his juvenile coparticipant, Angel G. Angel G. is defendant's 13-year-old brother-in-law.

An examination of the door revealed the knob had been removed by force and that two of three hinge pins had also been removed. A screwdriver and hammer were found nearby.

Defendant was taken into custody, advised of his rights, and interviewed by Detective Moralez at the police station. Defendant made a statement in which he admitted knowledge that the Goodwill store was being burglarized. He further admitted to being the lookout man in the burglary. He admitted throwing the tire iron, but claimed to have done so out of panic because someone yelled "Freeze." He denied knowing Snapp was a police officer.

At trial, defendant again admitted participation in the burglary and denied knowing Snapp was a police officer. He also denied, in direct contradiction to his earlier statement, that he threw the tire iron at someone, claiming instead that he threw it in a way to divert the person's attention from himself.

Defendant further claimed to have consumed one and one-half fifths of Thunderbird wine prior to the burglary. He contended he was too drunk to really know what he was doing.

---

[1]We state the facts most favorable to the respondent. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 245, pp. 4236-4238.)

## II. Alleged Instructional Errors*

### A. CALJIC No. 4.21*

. . . . . . . . . . . . . . . . . . . . . . . . .

### C. CALJIC No. 3.34

The court gave an abbreviated CALJIC No. 3.34 instruction:

"In each of the crimes charged—not charged, but included in Count Two of the Information; that is, assault with a deadly weapon upon a peace officer, assault with a deadly weapon, and simple assault, there must exist a union or joint operation of act or conduct and general criminal intent.

"To constitute general criminal intent, it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent even though he may not know that his act or conduct is unlawful.

"The intent with which an act is done may be shown by a statement of his intent made by a defendant or by the circumstances attending the act, the matter [sic] in which it is done, and the means used."

Defendant contends that if given, the court should have informed the jury that its use was limited to the general intent crime only. This assertion overlooks the careful way in which the court divided the instructions according to the offense charged, and instructed as to the intent needed for each.[2] When the court instructed as to the burglary charge, the jury was

---

*See footnote, *ante,* page 781.

[2]As a part of its charge to the jury, the court stated:

"In the crime charged in Count One of the Information; namely, attempted burglary, there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator. And unless such specific intent exists, the crime to which it relates is not committed.

"The specific intent required in the crime of attempted burglary is the specific intent to steal and take away someone else's property with the intent to deprive the owner permanentaly [sic] of his property.

"Every person who enteres [sic] any building with the specific intent to steal, take, and carry away the personal property of another of any value, and with the further specific intent to deprive the owner permanently of such property, is guilty of the crime of burglary. It is immaterial whether the intent with which the entry was made was thereafter carried out.

"In order to prove the commission of the crime of burglary, each of the following elements must be proved: that a person entered a building; that at the time of the entry, such person had the specific intent to steal and take away someone else's property and intended

told of the specific intent needed. As the above quotation from the transcript demonstrates, the general intent instruction was used in connection with the charge of assault with a deadly weapon upon a peace officer and the related lesser included offenses. The jury could not have believed that it applied to the charge of attempted burglary. ■ Although the general rule is that the order in which instructions are given is immaterial (18 Cal.Jur.3d, Criminal Law, § 876, p. 587), the rule has no application when a trial judge conscientiously marshals his instructions in an intelligible manner and the context in which the instruction is given indicates its relevance. (See generally *People* v. *Carrasco* (1981) 118 Cal.App.3d 936 [173 Cal.Rptr. 688].)

■ We find no error.

### D. CALJIC No. 9.08*

. . . . . . . . . . . . . . . . . . . . . . .

to deprive the owner permanently of such property.

"

"The defendant is charged in Count 2 of the Information with the commission of the crime of violation of Section 245-B of the Penal Code. Every person who commits an assault with a deadly weapon upon the person of a peace officer engaged in the performance of his duties and who knows or reasonably should know that such a person is a peace officer and is engaged in the performance of his duties is guilty of the crime of violation of Section 245, Subdivision B, of the Penal Code.

"In order to prove the commission of such crime, each of the following elements must be proved:

"1, that a person committed an assault with a deadly weapon;

"

". . . . . . . . . . . . . . . . . . . . . . .

"An assault is an unlawful attempt coupled with the present ability and general criminal intent to apply physical force upon the person of another. In order to prove the commission of the crime of assault, each of the following elements must be proved:

"1, that an attempt was made to apply physical force upon the person of another;

"

". . . . . . . . . . . . . . . . . . . . . . .

"4, that the person making the attempt had general criminal intent, which in this case means that he intended to commit an act, the direct, natural, and probable consequences of which, if successfully completed, would be the application of physical force upon the person of another. To constitute an assault, it is not necessary that any actual injury be inflicted.

"

". . . . . . . . . . . . . . . . . . . . . . .

"In each of the crimes charged—not charged, but included in Count Two of the Information; that is, assault with a deadly weapon upon a peace officer, assault with a deadly weapon, and simple assault, there must exist a union or joint operation of act or conduct and general criminal intent.

"To constitute general criminal intent, it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent even though he may not know that his act or conduct is unlawful.

"The intent with which an act is done may be shown by a statement of his intent made by a defendant or by the circumstances attending the act, the matter [*sic*] in which it is done, and the means used."

*See footnote, *ante,* page 781.

## III. Intent to Distract Instruction

Defendant testified that his intent from the beginning was only to use the tire iron to distract someone who might come upon the crime being committed, and that when it was thrown it was so used. Counsel also argued this in closing.

■ *People* v. *Hood* (1969) 1 Cal.3d 444 [92 Cal.Rptr. 172, 479 P.2d 372] and *People* v. *Rocha* (1971) 3 Cal.3d 893 [92 Cal.Rptr. 172, 479 P.2d 372] establish that assault with a deadly weapon is a general intent crime. The intent required is the intent to commit a battery. (*Rocha, supra,* at p. 899; also see *People* v. *Wolcott* (1983) 34 Cal.3d 92, 99 [192 Cal.Rptr. 748, 665 P.2d 520]; *People* v. *Smith* (1984) 151 Cal.App.3d 89, 96 [198 Cal.Rptr. 623].) "Battery" includes the "least touching" of the victim. (*People* v. *Rocha, supra,* 3 Cal.3d at p. 899, fn. 12.) "[T]o injure in the sense of inflicting bodily harm is not necessary." (*Id.,* at p. 899, fn. omitted.)

■ Defendant did not ask for an instruction informing the jury that if he threw the tire iron with an intent to distract, he could not be found guilty of assault. On appeal, he contends that such an instruction should have been given *sua sponte*.

Defendant relies on *People* v. *Marceaux* (1970) 3 Cal.App.3d 613 [83 Cal.Rptr. 798]. The prosecution was for assault with a deadly weapon. The defendant had pointed a loaded rifle at the victim, who was blocking a public highway temporarily so that he could load a ladder on his truck. The defendant claimed that he only intended to frighten the victim so that he would clear the roadway. The trial was completed before the Supreme Court had decided *Hood,* but the appeal was still pending at the time that decision was handed down. The trial court had instructed that an assault with a deadly weapon is an unlawful attempt, coupled with a present ability, to commit a violent injury with a deadly weapon upon the person of another. There is no indication in the *Marceaux* opinion that the defense had asked for a clarifying instruction. The appellate court reversed on the ground that the instructions did not "inform the jury in clear terms that an assault conviction cannot be predicated upon an intent only to frighten." (*Id.,* at p. 619.)[4]

In footnote 8 of *People* v. *Rocha, supra,* 3 Cal.3d at p. 899, our Supreme Court stated: "*People* v. *Marceaux,* 3 Cal.App.3d 613 . . ., and *People* v.

---

[4]*Marceaux* was cited with approval in *People* v. *Burres* (1980) 101 Cal.App.3d 341, 346 [161 Cal.Rptr. 593], and *People* v. *Puckett* (1975) 44 Cal.App.3d 607, 614 [118 Cal.Rptr. 884], without analysis or recognition of its disapproval in *Rocha.*

*Spence,* 3 Cal.App.3d 599 . . . are disapproved to the extent they are inconsistent with this opinion." The impact of this disapproval is ambiguous. *Marceaux*'s holding was that the jury was not properly instructed unless it was told that an assault conviction could not be based upon a mere intent to frighten. However, the appellate panel also stated: "Since assault requires proof of an intent to commit battery (injury), a conviction may not be grounded upon an intent only to frighten. [¶] Existence of intent to injure is a jury question . . . ." (*Marceaux, supra,* at p. 618.) *Marceaux*'s pronouncement that a battery requires an injury or an intent to injure is contrary to *Rocha*'s clarification that a battery does not require an "injury" in the sense of inflicting bodily harm. Perhaps this is all that was meant by the disapproval. However, the footnote relating to *Marceaux* follows these two sentences: "We adhere to those cases that hold that assault with a deadly weapon is a general intent crime. It remains to define what that intent is." (*Rocha, supra,* at p. 899.) The placement of the footnote indicates more than a reaffirmation that "injury" is not a synonym for bodily harm.

Since footnote 8 refers to both *Marceaux* and *People* v. *Spence* (1970) 3 Cal.App.3d 599 [83 Cal.Rptr. 711], it may be instructive to note what *Spence* holds. In *Spence,* the defendant played tag with the occupants of another vehicle as he was driving along a highway. He then fired into the right side of the other car, narrowly missing one of its occupants. As that car sped away, he fired a second shot into the rear window. The trial court instructed the jury that the defendant could be guilty of assault with a deadly weapon even if the defendant did not intend to hit the victim. The appellate panel reversed, on the ground that *People* v. *Carmen* (1951) 36 Cal.2d 768 [228 P.2d 281] held that a person could not be guilty of assault with a deadly weapon if he did not intend to kill or injure anyone. It further noted that *Hood* did not purport to overrule *Carmen.* The *Spence* panel then held that although the giving of the instruction was error, there was no prejudice because there were two instructions which held that proof of specific intent to do bodily injury was required.

In reference to jury instructions, *Marceaux* held that the jury was not properly instructed in an assault with a deadly weapon case unless it was told that such a crime had not been committed if the defendant only had an intent to frighten. *Spence* held that a jury was improperly instructed if told that one could be guilty of the crime even if the defendant did not intend to hit the victim. Both cases, then, are authority for the proposition that the defendant's intentions are important. No assault with a deadly weapon is committed if a loaded gun is pointed with the mere intent to frighten, or fired without the intent to score.

Because of the placement of footnote 8 in *Rocha* and because of the similarity of the instructions in the two Court of Appeal cases, and because the

actual holding in *Marceaux* was that the jury should have been instructed that an assault conviction could not be based upon a mere intent to frighten, one might conclude that the Supreme Court wished to express its disapproval of such law. However, whatever the court's intent was in 1971 when it filed *Rocha,* the court's present position is that: "Penal Code section 240 defines assault as '[a]n unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.' So defined, assault under California law departs from the common law definition in two crucial respects. First, under the California definition 'a conviction for assault may not be grounded upon intent only to frighten.' (*People* v. *Burr[e]s* (1980) 101 Cal.App.3d 341, 346 . . .; see *People* v. *Vidaurri* (1980) 103 Cal.App.3d 450, 463 . . . ; *People* v. *Puckett* (1975) 44 Cal.App.3d 607, 614 . . . .)"[5] (*People* v. *Wolcott* (1983) 34 Cal.3d 92, 99 [192 Cal.Rptr. 748, 665 P.2d 520].)

In view of the Supreme Court's language in *Wolcott,* we have no difficulty in holding that our defendant's asserted motive is relevant to a determination of his guilt or innocence. Even if it were the law that one's specific intent to merely frighten was not relevant to a determination of whether he had the general intent to commit an assault, we would come to the same conclusion, for if our defendant's intent was to direct his missile someplace other than near where the victim was standing, but as thrown it became a threat to the victim's safety and well being, his degree of culpability is somewhat less than that of one who pointed a loaded gun at a victim with the secret intent to merely frighten.

We thereby conclude that had the defendant requested an instruction to the effect that the defendant could not be found guilty of assault if he intended to throw the tire iron in a direction which would not make it pass dangerously near a person, and if his intent was not an attempt to commit a wrongful act by means of physical force against the officer but was an attempt to distract, the instruction should have been given. We turn to a discussion of whether such an instruction should have been given *sua sponte.*

Although such an instruction would have been proper, it does not follow that the trial court had a duty to give it *sua sponte* if the instructions actually given to the jury made it clear that the defendant must have attempted to commit battery with a deadly weapon. (*People* v. *Walton* (1982) 136 Cal.App.3d 76 [186 Cal.Rptr. 18]; see also *People* v. *Rocha, supra,* 3 Cal.3d at p. 900, fn. 13.) The jury was instructed, in part, as follows:

---

[5] As we observed in footnote 4, *ante, Burres* and *Puckett* cited *Marceaux, supra,* 3 Cal.App.3d 613, without analysis or recognition of its disapproval in *Rocha.*

"The defendant is charged in Count 2 of the Information with the commission of the crime of violation of Section 245-B of the Penal Code. Every person who commits an assault with a deadly weapon upon the person of a peace officer engaged in the performance of his duties and who knows or reasonably should know that such a person is a peace officer and is engaged in the performance of his duties is guilty of the crime of violation of Section 245, Subdivision B, of the Penal Code.

"In order to prove the commission of such crime, each of the following elements must be proved:

"1, that a person committed an assault with a deadly weapon;

". . . . . . . . . . . . . . . . . . . . . . .

"An assault is an unlawful attempt coupled with the present ability and general criminal intent to apply physical force upon the person of another. In order to prove the commission of the crime of assault, each of the following elements must be proved:

"1, that an attempt was made to apply physical force upon the person of another;

". . . . . . . . . . . . . . . . . . . . . . .

"4, that the person making the attempt had general criminal intent, which in this case means that he intended to commit an act, the direct, natural, and probable consequences of which, if successfully completed, would be the application of physical force upon the person of another. To constitute an assault, it is not necessary that any actual injury be inflicted."

The above instructions fully and fairly instructed the jury that the defendant was guilty only if he attempted to use physical force upon the officer. This necessarily excluded a circumstance in which the defendant merely attempted to distract her attention. The jury was instructed on the general principles of law governing the case, as required by *People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1]. There was no *sua sponte* duty to do more. We note that *People* v. *Vidaurri* (1980) 103 Cal.App.3d 450 stated at page 462 [163 Cal.Rptr. 57]: "Appellant contends that the court erred in that it failed to instruct the jury, *sua sponte,* that an intent merely to frighten was insufficient for a finding of assault with a deadly weapon. Appellant cites no authority for the novel proposition that such an instruction is required of the trial court, *sua sponte,* and we know of none."

To the same effect is *People* v. *Walton* (1982) 136 Cal.App.3d 76 [186 Cal.Rptr. 18].

## IV. SENTENCING*

## A. DUAL USE OF FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## VI. CONCLUSION

The judgment is affirmed.

Brown (G. A.), P. J., and Martin, J., concurred.

A petition for a rehearing was denied September 27, 1984, and appellant's petition for a hearing by the Supreme Court was denied December 12, 1984.

---

*See footnote, *ante,* page 781.