Filed 7/7/16  P. v. Garcia CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062668 |
| v. | (Super.Ct.No. RIF1303636) |
| GUILLERMO FLORES GARCIA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Rafael A. Arreola, Judge. (Retired Judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kristen Chenelia, and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

# INTRODUCTION[1]

After a confrontation, defendant Guillermo Flores Garcia shot Abraham Nunez. In their respective testimonies, each man blamed the other man for using a gun and attacking with a broomstick.

The jury convicted defendant of aggravated assault with a firearm. (Count 2; §§ 245, subd. (a)(2); 1192.7, subd. (c)(8); and 12022.7, subd. (a).) However, the jury found defendant not guilty of attempted murder, as well as the lesser-included offense of attempted voluntary manslaughter, and the firearm use and great bodily injury allegations. (Count 1; §§ 187, subd. (a), 664, 1192.7, subd. (c)(8); and 12022.7, subd. (a).) The jury also acquitted defendant of assault with a deadly weapon other than a firearm (the broomstick) and the attendant allegations. (Count 3; §§ 245, subd. (a)(1); 1192.7, subd. (c)(8); and 12022.7, subd. (a).) The court sentenced defendant to a prison term of 19 years, consisting of the middle term of six years on count 2, plus consecutive terms of three years and 10 years based on the great bodily injury and firearm use enhancements, respectively.

On appeal, defendant argues the court exhibited judicial bias and failed to instruct the jury on self-defense. Defendant also contends he received ineffective assistance of counsel. We reject these contentions and affirm the judgment.

---

[1] All statutory references are to the Penal Code unless stated otherwise.

II

STATEMENT OF FACTS

A.    *Prosecution Evidence*

Defendant and Juan Garcia (Juan) were cousins who had once lived together. When defendant raised the rent, Juan moved out and the two men had not spoken for about a year until they met at a quinceañera party on April 6, 2013.

Juan attended the party with his neighbor, Nunez. Both defendant and Nunez were drinking. Nunez testified that defendant insulted him, using a common slang expression, "going to partir la madre."[2] Nunez was upset because his mother had died a year earlier.

The men ran into each other again in the bathroom where defendant repeated insulting statements. After the two men argued, Nunez challenged defendant to go outside where Nunez hit defendant and knocked him down before returning to the party. Soon Nunez left the party with Juan. Nunez went home to his trailer.

Later, Nunez heard banging, yelling, and noises close to his trailer. When Nunez opened the door, defendant was standing two to three feet away. Defendant announced, "I was looking for you" and fired a small chrome pistol. Nunez testified at trial he did not see the gun until just before defendant started shooting.

Nunez was hit three times—his elbow, his right armpit, and his right bicep. His left arm was also broken. Another bullet hit the ceiling while the two men struggled over

---

[2] The colloquial, not literal, meaning of "Partir la madre" is to smash or destroy something.

3

the gun. When the gun fell to the floor, Nunez grabbed it, pointed it at defendant, and pressed the trigger although the gun did not fire. Nunez then threw the gun onto the roof of the house in front of his trailer. While Nunez was running back to his trailer, defendant hit him on the head with a stick. Nunez managed to get back inside his trailer. At the hospital, Nunez needed eight staples to close the head injury caused by the stick.

Nunez denied getting a gun from Juan. He also denied picking up a broom or stick and hitting defendant with it.

When Juan and Juan's girlfriend, Krissa Tejada, heard the commotion and shooting, she called 911. Deputy sheriffs, Darryl Robertson and Carlos Vazquez, were dispatched to 54th Street in Jurupa Valley on April 7, 2013, at 2:06 a.m.

When the deputies arrived, defendant was in front of the house, frantically waving his arms to get the deputy's attention. He asked for help and said, "They are shooting." Deputy Vazquez testified defendant seemed intoxicated, with slurred speech and an unsteady gait. The deputies detained defendant in the car. Deputy Robertson could still hear a "loud banging sound coming from the rear of the residence."

The deputies conducted a sweep of the three residences on the property. In a small trailer with an open door, the deputies found Nunez, lying on the bed and bleeding but conscious. The deputies also found part of a broomstick, three spent .22-caliber shell casings, and defendant's car keys and cell phone. In the driveway of the residence, Deputy Robertson found the other half of the broomstick and a puddle of blood. Defendant's Toyota Tundra was also parked in the front of the property with a blood-smeared white hat in the back seat.

4

On the roof of the main house the deputies found a small .22-caliber handgun with a magazine, but unloaded, and nearby a live round of the same caliber. The handgun and the casings were not tested for fingerprints or DNA. Defendant displayed no injuries.

### B. Defense Evidence

Defendant offered a different version of what happened. He testified that he, his wife, and their three children arrived at the party at 7:00 p.m. Defendant wore a white cowboy hat.

Defendant was drinking at the bar with a friend, Sergio, when Juan and Nunez came over. Defendant had not seen his cousin recently. Juan wanted to know if defendant was mad at him and cajoled: "Cuz, have a drink with . . . me." Defendant said he was not mad but also did not care to have a beer with Juan. Nunez started shoving defendant's left arm and shoulder. Juan continued to ask defendant to drink with him and not to make him beg. Nunez shoved defendant again, at which point defendant asked Nunez: "Who are you? I don't know who you are. Why are you shoving me?" Sergio and defendant left the bar area.

When defendant went to the bathroom, Juan and Nunez appeared there. As defendant left the bathroom, he heard Nunez tell Juan: "Either you fuck him up or I fuck him up." Defendant knew something was wrong and walked away quickly.

Outside the banquet hall, Nunez yelled at defendant and threatened him, "I'm going to beat the shit out of you." Defendant said he did not want any problems and approached his truck where his wife was waiting for him. Nunez followed him and hit

5

him twice with a closed fist. Defendant was knocked out. When defendant regained consciousness, Nunez was gone. The blood from defendant's head wound stained his white hat.

After returning home, defendant decided to visit "the engineer," another party guest who lived on the same property as Juan, and ask him about Nunez. The engineer said he did not know who had attacked defendant. The engineer allowed defendant to go into the backyard to talk to Juan.

Defendant knocked on Juan's door but there was no answer. Defendant was starting to leave when Nunez came out of his trailer and yelled at defendant. Nunez asked defendant: "[Y]ou want me to beat the shit out of you again like I did at the casino?" The two men advanced on one another and started punching. Eventually, they were fighting at the open door of the trailer and defendant knocked Nunez down and kept hitting him. Defendant saw Nunez grab something. Defendant grabbed Nunez's arm or wrist. As defendant grappled with Nunez, the gun fired twice. Defendant claimed Nunez had not been hit by either bullet. Defendant later testified he recognized the gun as belonging to Juan.

As the struggle continued, Nunez kicked defendant and threw him against the wall. The gun landed somewhere in the dark. Nunez got up holding the gun. Nunez pointed the gun at defendant's forehead, laughing. Nunez tried to shoot, but the gun just "clicked."

Defendant ran while Nunez chased him and hit him with a broomstick. The broom broke when Nunez hit defendant on the left side of his head. After that, Nunez hit

6

defendant two or three times on his rib cage and left forearm. Defendant was knocked out. When Nunez started to hit him again, defendant grabbed the broom stick from Nunez and hit him on the head. Nunez ran inside the trailer.

Defendant's upper left cheek and ear were cut. Defendant lost hearing in the left ear. He also sustained bruising on the right side of the face and to his lower left lip. Since the fight, defendant has suffered headaches and occasional memory loss, as well as back pain.

When the responding deputies arrived, Deputy Vazquez ordered defendant to put up his hands and get on the ground. Vazquez searched defendant and asked, "Where's the weapon?" Defendant responded that Nunez was armed. Vazquez placed defendant in the patrol unit and took him to a hospital.

III

JUDICIAL BIAS

Defendant argues the trial court exhibited prejudicial judicial bias and violated his right to a fair trial and to present a defense. His claims have been forfeited by not seeking disqualification of the trial judge. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1320; *People v. Johnson* (2015) 60 Cal.4th 966, 980; *People v. Guerra* (2006) 37 Cal.4th 1067, 1111-1112.) Nevertheless, even considering the merits, we reject defendant's claims.

A criminal defendant has a due process right to an impartial trial judge under the United States and California Constitutions. (*Bracy v. Gramley* (1997) 520 U.S. 899, 904-905; *People v. Freeman* (2010) 47 Cal.4th 993, 1000.) The comments of the judge about

7

witnesses, evidence and its importance or lack thereof, and indications of hostility toward or displeasure with defense counsel can all negatively impact a defendant's right to a fair trial. The jurors "rely with great confidence on the fairness of judges, and upon the correctness of their views expressed during trials." (*People v. Sturm* (2006) 37 Cal.4th 1218, 1233.) Indeed, jurors "are apt to give great weight to any hint from the judge as to his opinion on the weight of the evidence or the credibility of the witnesses, . . ." (*People v. Robinson* (1946) 73 Cal.App.2d 233, 237.) Judges have a "duty to maintain a strictly judicial attitude and to refrain from comment or other conduct which borders upon advocacy." (*People v. Campbell* (1958) 162 Cal.App.2d 776, 787.) A judge should not criticize the defense's theory. (*People v. Sturm, supra,* 37 Cal.4th at p. 1238.) It is also improper for a judge to express personal views about the trial lawyers, even if an underlying evidentiary ruling is correct. (*Sturm,* at p. 1240; citing *People v. Fatone* (1985) 165 Cal.App.3d 1164, 1174-1175.)

On the other hand, adverse judicial rulings, impatience, and criticism do not demonstrate bias absent some extrajudicial source. (*Liteky v. United States* (1994) 510 U.S. 540, 555; *People v. Guerra, supra,* 37 Cal.4th at pp. 1111-1112; *People v. Snow* (2003) 30 Cal.4th 43, 78.) Opinions formed by the judge on the basis of facts introduced or events occurring in the course of current proceedings do not constitute bias unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. (*Liteky,* at p. 551.) Furthermore, a defendant is only entitled to a fair trial, not a perfect trial. (*People v. Freeman, supra,* 47 Cal.4th at p. 1000; *Guerra,* at p. 1112; *Snow,* at p. 78.)

8

Defendant offers numerous examples of what he contends was judicial bias. The first incident occurred when defense counsel was almost an hour late to court and the court set a hearing on sanctions. Ultimately, the court imposed a suspended fine of $250. All this occurred outside the presence of the jury and could not have influenced its verdict. (*People v. Guerra, supra,* 37 Cal.4th at p. 1112.)

Defendant next maintains that, throughout the trial, the judge interjected statements disparaging the theory of the defense when defense counsel sought to establish the bias of witnesses, impeach the alleged victim, establish defendant's intoxication and other defenses, and provide foundational evidence. Defendant asserts the trial court repeatedly limited the defense examination of key witnesses. Defendant complains that, even when allowing evidence over the prosecutor's objection, the court would tell jurors it was irrelevant but would be allowed only for the limited purpose of credibility.

During defense counsel's cross-examination of Juan's girlfriend, Tejada, the court sustained multiple objections made by the prosecution on the grounds of lack of relevance to the primary issue of whether defendant shot Nunez. However, we agree defense counsel's questions about whether Tejada woke up Juan that night and how dark it was outside were irrelevant. Defense counsel's other questions about the names of party guests, about when defendant and Juan disagreed about rent, and how much money Juan was earning at the time of trial were also irrelevant. The trial court was justified in its ruling: "We're getting pretty far away, okay. I'm allowing this testimony for the limited purpose of credibility. Otherwise, there's no relevance as to whether there was a shooting or not a shooting or a beating or not a beating. But for the limited purpose of

9

credibility, I'll allow it, subject to a motion to strike." The court's adverse rulings on these points were not biased. (*People v. Guerra, supra,* 37 Cal.4th at pp. 1111-1112.)

We also reject defendant's related contention that the court erred in admitting Tejada's testimony that she was afraid defendant had a gun based on hearsay information she received from a third party. Her testimony was certainly relevant to show why she was concerned when defendant knocked on her door when he was looking for Nunez. Admitting this evidence was not an abuse of discretion. (Evid. Code, §§ 351 and 352; *People v. Harris* (2005) 37 Cal.4th 310, 337.)

Next, defendant challenges the trial court's rulings on the defense's cross-examination of Juan. Juan had expressed fear of retribution from defendant or defendant and Juan's family members. However, the court would not allow defense counsel to question Juan about all his family relationships. The court also restricted questions about when Juan and defendant had lived together although the judge stated the evidence about whether they were on speaking terms "may have some relevance for the limited purpose of credibility" and "subject to a motion to strike." The court also sustained an objection to defense counsel asking about Juan's employment and would not allow defense counsel to comment on Juan's demeanor while he testified. The court again deemed irrelevant questions about the size of the party and the bar. The court admonished defense counsel to avoid wasting time on irrelevant detail and told the jury he was only allowing the evidence to evaluate credibility. Defendant also contends the court forced defense counsel to elicit from Juan the damaging testimony that defendant owned several

10

firearms, including a .22-caliber gun.  Again, we conclude the trial court's rulings did not exhibit judicial bias.  (*People v. Guerra, supra,* 37 Cal.4th at pp. 1111-1112.)

Mario Corrales was the third prosecution witness.  The court objected on its own motion to defense counsel's questions about the basis for Corrales's estimates of distance between his bedroom and Nunez's trailer.  The court also asked defense counsel to get to the point and "move it a little bit faster" and again questioned the relevance and foundation of the defense cross-examination.  No bias was demonstrated.  (*People v. Guerra, supra,* 37 Cal.4th at pp. 1111-1112.)

During defense counsel's cross-examination of Nunez, the court repeatedly commented about wasting time, relevance, and limiting the evidence to the issue of credibility.  Defense counsel requested a sidebar to explain the reasons for his questions. The court reasonably responded that most of what happened at the party did not have a bearing on the theory of imperfect self-defense and "the act that happened hours later of going to the house, searching for the person, finding the person, shooting, if that's true."

On appeal, defendant argues that, whatever the trial court's justification, the comments in the presence of the jurors were likely to prejudice them against defendant and his lawyer and interfere with defendant's right to present a defense and to have the effective assistance of his counsel.  (*People v. Sturm, supra*, 37 Cal.4th at p. 1238.) Defendant also complains he was prejudiced by the court's favorable rulings toward the prosecutor.  Taken separately and together, we hold defendant has not shown judicial bias prejudicial to his case.  (*People v. Guerra, supra,* 37 Cal.4th at pp. 1111-1112; *People v. Lewis* (2001) 25 Cal.4th 610, 637.)

11

Finally, we do not find any prejudicial error. The jury convicted defendant on one count but acquitted him on two others. The jury was clearly not affected by judicial bias. It is not reasonably probable defendant would have received a more favorable result had the court ruled differently. (*People v. Harris, supra,* 37 Cal.4th at pp. 350-351.)

IV

SELF-DEFENSE

Defendant next argues the trial court erred by not giving an instruction sua sponte on self-defense (CALCRIM No. 3470) as related to count 2, assault with a firearm. The People argue no such instruction was warranted because defendant claimed the gun discharged when defendant and Nunez were struggling to control it—not that defendant acted in self-defense. We agree.

The jury was expressly instructed, based on CALCRIM No. 875, on the elements of assault with a semi-automatic firearm (count 2), including the element: "The defendant did not act in self-defense." The jury was also instructed, based on CALCRIM No. 505, on self-defense for attempted murder (count 1) and, based on CALCRIM No. 604, on imperfect self-defense for involuntary manslaughter, a lesser included offense. Other self-defense instructions were based on CALCRIM Nos. 3471, 3472, and 3474 but not CALCRIM No. 3470.

The trial court has a sua sponte duty to instruct the jury on those "general principles of law that are closely and openly connected with the facts presented at trial." (*People v. Ervin* (2000) 22 Cal.4th 48, 90; *People v. Peabody* (1975) 46 Cal.App.3d 43, 49.) The "general principles of law governing the case," in turn, are defined as "those

12

principles closely and openly connected with the evidence adduced before the court which are necessary for the jury's proper consideration of the case." (*Peabody,* at p. 49, citing *People v. Wilson* (1967) 66 Cal.2d 749, 759.) Substantial evidence must support a jury instruction. (*People v. Salas* (2006) 37 Cal.4th 967, 982; *In re Christian S.* (1994) 7 Cal.4th 768, 783.) In order to justify self-defense, defendant must have an honest and reasonable belief in the imminent threat of bodily injury. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064; *In re Christian S.,* at p. 783.)

Defendant argues the trial court should have given CALCRIM No. 3470 "to inform the jury in clear terms" that possession of a firearm, even if pointed at Nunez at some point before or during the altercation, was not criminal if done in self-defense. (*People v. Marceaux* (1970) 3 Cal.App.3d 613, 619.) The evidence, however, does not support a self-defense instruction. Nunez testified that defendant came to his door, pointed a gun, and shot him. Juan and Tejada's testimony corroborated Nunez's version of what happened. Their neighbor, Corrales, testified similarly.

Defendant's own testimony did not support an instruction on self-defense. Defendant admitted he came to Nunez's front door to provoke him after they quarreled. Defendant cannot reasonably claim to have acted in self-defense based on these facts. Furthermore, there was no prejudicial error under any standard (*People v. Salas, supra,* 37 Cal.4th at p. 984) because defendant cannot establish the instruction was justified even if the jury acquitted him of attempted murder and the other assault charge.

13

## V

## INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also claims his lawyer failed to make a motion for new trial on count 2 and committed other prejudicial errors. We disagree.

Defendant was constitutionally entitled to effective assistance of counsel. (U.S. Const., 6th Amend.; *Strickland v. Washington* (1984) 466 U.S. 668, 684-685; *People v. Pope* (1979) 23 Cal.3d 412, 422, disapproved on other grounds in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.) Relief based on denial of this Sixth Amendment right requires a showing that the performance of defendant's counsel was below an objective standard of reasonableness under prevailing professional norms and that the deficient performance prejudiced the defendant. (*Strickland,* at pp. 687, 691-692; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217; *Pope,* at p. 425.) The burden of proof is a preponderance of the evidence. (*Ledesma,* at p. 218.) To show prejudice, a defendant must show there is a reasonable probability that he or she would have received a more favorable result had his counsel's performance not been deficient. (*Strickland,* at pp. 693-694; *Ledesma,* at pp. 217-218.) That "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." (*People v. Williams* (1997) 16 Cal.4th 153, 215.)

"Penal Code section 1181, subdivision (6) permits a defendant to move for a new trial on the ground that the verdict is contrary to the evidence. In deciding such a motion, the trial court's function is to 'see that the jury intelligently and justly perform[ed] its duty and, in the exercise of a proper legal discretion, to determine whether there is

14

sufficient credible evidence to sustain the verdict.' (*People v. Robarge* (1953) 41 Cal.2d 628, 634.)  The trial court's duty is to review the evidence independently and satisfy itself that the evidence as a whole is sufficient to sustain the verdict.  (*Id.* at p. 633.)" (*People v. Dickens* (2005) 130 Cal.App.4th 1245, 1251.)

Following the presentation of the People's case, defense counsel made a motion to dismiss (§ 1181.1), arguing that count 2 had not been proved "based on the theory that [defendant] in the process of raising his hand with the gun to Nunez constitutes a 245." Nunez testified that "he hears noise, he opens the door, he sees my client.  And then next thing he sees is the flashes from the gunfire."  Counsel argued there was "no testimony that Mr. Nunez at any time saw my client raise his hand and . . . have the gun pointed at him until after the gun goes off."  Thus, there was only one offense and nothing to justify a separate charge of assault with the gun, for which defendant was also being charged with attempted murder.

The prosecutor opposed the motion to dismiss, arguing that Nunez, although first testifying that he saw nothing in defendant's hand, did acknowledge at the preliminary hearing that he saw defendant pointing a gun at his body.  Later, Nunez testified he opened the door and saw defendant standing there with a gun.  Therefore, according to the prosecutor, there are "two distinct acts that are sufficient to go to the jury."

In denying the motion to dismiss, the trial court indicated there was "conflicting testimony with respect to Count 2."  The victim testified both that he thought he saw a gun and he did not see a gun.  The trial court concluded this was "really a question of fact for the jury," and denied the section 1118.1 motion.

Defendant asserts that, "[w]hen defense counsel failed to bring a post-verdict motion pursuant to Penal Code section 1181, he ignored both his legal duty to file all necessary motions on behalf of his client and the trial court's earlier indication that the evidence presented by the People was not sufficient to support a finding of guilt beyond a reasonable doubt. . . . [¶] It is reasonably probable that, had defense counsel fulfilled his duty to appellant and filed the section 1181 motion, the court—with the benefit of its observations throughout the trial—would have found the verdict not consistent with the evidence."

We conclude it is not reasonably probable the court would have granted a motion for new trial. By finding defendant guilty of assault with a firearm and finding true that defendant personally used a firearm and caused great bodily injury, the jury must have found that, when Nunez opened the door to his trailer, defendant pointed the gun at Nunez before he began shooting. The evidence fully supports the jury's verdict on count 2. Defendant's additional claims about Tejada's testimony based on hearsay evidence and the omitted instruction on self-defense are meritless. Defendant cannot establish deficient performance or prejudice for failure to make a motion for a new trial.

16

# VI

# DISPOSITION

There is no error and no cumulative error.  (*People v. Tully* (2012) 54 Cal.4th 952, 1061.)  We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.