Filed 1/21/15  In re C.M. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re C.M., A Person Coming Under the Juvenile Court Law. | B252398 |
| _____ | (Los Angeles County Super. Ct. No. KJ38359) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| C.M., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Geanene M. Yriarte, Judge.  Modified and affirmed.

Mary Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, George A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Cesar M. was adjudicated a ward of the court, after the trial court sustained a petition charging that defendant had committed: (1) assault on a police officer with a deadly weapon (Pen. Code, § 245, subd. (c)); (2) obstructing or resisting an officer by force or violence (Pen. Code, § 69); and (3) commercial burglary (Pen. Code, § 459). Defendant appeals. We modify the judgment to correct sentencing errors and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Underlying Facts*

Defendant, aged 16, broke into an elementary school with two of his friends, where they stole various items including an ELMO portable projector. Pomona Police Department Officer Trevor Stevenson responded to an alarm call at the school at approximately 4:40 a.m. While still in his patrol car, he saw defendant and his friends leave a classroom, carrying bags or backpacks. The three suspects initially walked in Officer Stevenson's direction, but when they saw him, they turned and ran in the opposite direction.

Officer Stevenson gave chase in his patrol car; he found the suspects on a nearby street. Officer Stevenson got out of his patrol car, identified himself as a police officer, and ordered the suspects to get on the ground. The suspects responded by running away. Officer Stevenson gave chase; this time on foot. The three suspects ran along the sidewalk; Officer Stevenson was running in the street, behind and to the right of the suspects.

Defendant kept looking back over his right shoulder, to where Officer Stevenson was running. When Officer Stevenson was approximately 10 or 15 feet away from defendant, defendant threw a metal crowbar towards him. The crowbar clattered harmlessly to the street, to the right and ahead of Officer Stevenson.

The chase continued. Officer Stevenson continued to tell defendant to get on the ground; defendant continued to run. Eventually, defendant began slowing. Officer Stevenson was not sure whether defendant was planning to cross the street (to his right) or give up. Officer Stevenson continued to approach defendant. As Officer Stevenson

2

came within arm's reach of defendant, defendant swung the black bag – containing the stolen projector – like a baseball bat and struck Officer Stevenson in his knees. The blow did not stop Officer Stevenson's approach. Officer Stevenson tackled defendant to the ground, and took him into custody. Officer Stevenson suffered some abrasions on his hand from the tackle, and some swelling to one knee which he attributed to either the tackle or being struck with the bag. The other two suspects were not apprehended.

Defendant was interviewed by Pomona Police Department Officer Jesse Hedrick, sometime later, in the waiting room of Pomona Valley Community Hospital.[1] Officer Hedrick read defendant his *Miranda*[2] rights, which defendant said he understood. Defendant admitted following his friends into the classroom to take projectors. He stated that he and his friends sell the projectors for $200. Defendant admitted knowing that a police officer was chasing him. He stated that he had dropped the crowbar or thrown it backwards. He also stated that he had thrown the black bag backwards in an attempt to get away from the pursuing officer. Defendant claimed to be remorseful, although he refused to provide police with the names of the individuals who had broken into the school with him.

2. *Pretrial Pitchess*[3] *Motion*

After defendant was ordered detained, he sought disclosure of information contained in the personnel files of Officers Stevenson and Hedrick, related to their use

---

[1] Defense counsel inferred that, since defendant was in the hospital when questioned by police, defendant had been injured by Officer Stevenson's tackle. There was no evidence at trial that defendant had been injured. Officer Hedrick testified that he later learned that defendant had been transported to the hospital "for medical clearance for booking." The detention report explained that defendant "was medically clear in Valley Hospital for using meth[]amphetamine and alcoholic beverage prior to his entry to juvenile hall." Indeed, the detention report states that defendant admitted marijuana use, methamphetamine use, and alcoholic beverage consumption. In the same statement, defendant claimed that officers "punched him in the face and knocked him to the ground during the arrest."

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

[3] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

of excessive force and/or writing of false police reports.[4]  The motion was supported by a declaration of counsel, which set forth the following scenario:  While defendant was running from Officer Stevenson, he "tossed the crowbar to his side while he was running, not in the direction of any officer and before the officer got close[] to him."  Defendant then "decided to stop running from the police and he stopped so he could get to his kne[e]s on the ground to surrender.  Officer Stevenson tackled [defendant] and [defendant] stopped running."  Officer Stevenson used excessive force in detaining defendant, and defendant sustained injuries from the tackle.[5]  Officer Hedrick did not read defendant his *Miranda* rights before questioning him in the hospital.

Although counsel's declaration represents that Officer Stevenson used excessive force in tackling defendant, the declaration *at no time* suggests that defendant used reasonable force against Officer Stevenson in *defending himself* from the use of excessive force.  Counsel's declaration does not state that defendant struck Officer Stevenson with the projector intentionally, in self-defense.[6]

The trial court granted defendant's *Pitchess* motion with respect to information relating to claims of writing false reports, but denied it with respect to claims of excessive force.  The court stated that excessive force is not a defense to the charged crimes "because the officer according to the case as a whole never touched the minor before the minor allegedly threw the crowbar and threw the bag."  The court held an in camera hearing with the custodian of the relevant records, and concluded that no documents existed which related to claims of writing false reports.

---

[4]      The motion also sought information relating to other issues such as "racial bias, gender bias, ethnic bias, sexual orientation bias . . . fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, illegal search/seizure, [and] false arrest . . . . "  These issues are not implicated in this appeal.

[5]      Defense counsel's affidavit did not suggest Officer Stevenson had punched defendant in the face.  (See footnote 1, *ante*.)

[6]      Counsel's declaration has two key paragraphs – one setting forth the facts from the arrest report; and the other, the defense's view of the facts.  The latter paragraph does not mention that defendant swung the projector at Officer Stevenson at all.

3.    *Trial and Sentencing*

After trial, the court heard argument.  The court was specifically concerned with sufficiency of the evidence of the first count, assault on a police officer with a deadly weapon.  Defense counsel argued that the crowbar had simply been discarded, not thrown at Officer Stevenson.  As to striking the officer with the bag, defense counsel argued that defendant had simply attempted to get rid of the evidence, as he knew he was about to get tackled.  Defense counsel further argued that a projector is not a deadly weapon, nor was it used with an intent to injure.  The prosecutor argued that the crowbar was not simply dropped, but was instead thrown in the direction of the officer.  While the prosecutor believed that the act of throwing the crowbar alone constituted assault on a police officer with a deadly weapon, the prosecutor also argued that swinging the bag like a baseball bat at an officer running full speed toward the defendant also satisfied the requirements of the offense.  The court found all three charges true beyond a reasonable doubt.  The court specifically found that the crowbar had been thrown at Officer Stevenson, not dropped.  The court determined that all three offenses were felonies.

At the disposition hearing, defendant was ordered to camp community placement for three months, with a possibility of release at 60 days if defendant was making progress.  The court calculated defendant's maximum term of confinement to be seven years.

### CONTENTIONS ON APPEAL

Defendant contends:  (1) the court erred in denying defendant's *Pitchess* motion with respect to complaints of excessive force against Officer Stevenson;[7] (2) there was insufficient evidence that defendant committed assault on a police officer with a deadly weapon; and (3) the court miscalculated defendant's maximum term of confinement.

---

[7]    Defendant also requests this court to independently review the transcript of the in camera proceedings on the *Pitchess* motion.  The prosecution agrees.

## DISCUSSION

### 1. *The Court Did Not Err in Denying the Pitchess Motion with Respect to Evidence of Excessive Force*

"The legal principles guiding our review of *Pitchess* motions are well established. 'A defendant has a limited right to discovery of a peace officer's confidential personnel records if those files contain information that is potentially relevant to the defense. [Citations.] . . . [¶] To initiate discovery, a defendant must file a motion seeking such records, containing affidavits "showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation . . . . " [Citation.] Good cause requires the defendant to establish a logical link between a proposed defense and the pending charge and to articulate how the discovery would support such a defense or how it would impeach the officer's version of events. [Citation.]' " (*Sisson v. Superior Court* (2013) 216 Cal.App.4th 24, 33-34.) "What the defendant must present is a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1025.)

In determining whether the defendant has established good cause, the trial court considers whether materiality has been established. "The court does that through the following inquiry: Has the defense shown a logical connection between the charges and the proposed defense? Is the defense request for *Pitchess* discovery factually specific and tailored to support its claim of officer misconduct? Will the requested *Pitchess* discovery support the proposed defense, or is it likely to lead to information that would support the proposed defense? Under what theory would the requested information be admissible at trial? If defense counsel's affidavit in support of the *Pitchess* motion adequately responds to these questions, . . . then the defendant has shown good cause for discovery and in-chambers review of potentially relevant personnel records of the police officer accused of misconduct against the defendant." (*Warrick v. Superior Court, supra,* 35 Cal.4th at pp. 1026-1027.)

6

In this case, defendant contends that materiality, and thus good cause, has been established, because charges of excessive force against Officer Stevenson are relevant to defendant's defense that he acted in self-defense against Officer Stevenson's use of excessive force. However, defendant's counsel did not assert this defense in the affidavit in support of defendant's *Pitchess* motion.[8] Defendant's counsel posited that Officer Stevenson had used excessive force in tackling defendant, but made no argument that either the crowbar or the bag was thrown at Officer Stevenson *in self-defense against the alleged excessive force*. Indeed, as the trial court noted, the incidents with the crowbar and bag both indisputably occurred *before* Officer Stevenson made the tackle with allegedly excessive force. It is difficult to see how defendant could have used force to defend against purported excessive force which had not yet occurred. The trial court therefore did not err in denying the *Pitchess* motion with respect to excessive force.

Defendant next requests that we independently review the records from the in camera hearing, to assure that the proper *Pitchess* procedure was followed, in connection with the grant of the *Pitchess* motion with respect to the issue of filing false police reports. The prosecutor concurs that the request is appropriate. The procedural requirements for a *Pitchess* hearing are set forth in *People v. Mooc* (2001) 26 Cal.4th 1216. "When a trial court concludes a defendant's *Pitchess* motion shows good cause for discovery of relevant evidence contained in a law enforcement officer's personnel files, the custodian of the records is obligated to bring to the trial court all 'potentially relevant' documents to permit the trial court to examine them for itself. [Citation.] . . . A court reporter should be present to document the custodian's statements, as well as any questions the trial court may wish to ask the custodian regarding the completeness of the record. [Citation.] [¶] The trial court should then

---

[8] Defendant notes, correctly, that the points and authorities of the motion did argue that discovery of excessive force complaints is mandated when a defendant alleges the defense of self-defense. However, there was no mention of self-defense in the affidavit, upon which the determination of good cause must be made.

7

make a record of what documents it examined before ruling on the *Pitchess* motion. . . . If the documents produced by the custodian are not voluminous, the court can photocopy them and place them in a confidential file. Alternatively, the court can prepare a list of the documents it considered, or simply state for the record what documents it examined." (*Id.* at pp. 1228-1229.)

Here, the trial court complied with the procedural requirements set forth by *Mooc*. The custodian of records for the Pomona Police Department testified under oath that there were no responsive documents in the files of Officers Stevenson and Hedrick. The custodian of records further described an additional document which was not produced. The court questioned the custodian of records as to the contents of the unproduced document, and concluded that it was not relevant to the issue of writing false police reports. We have conducted an independent review of the transcript and find no abuse of discretion.

2. *There Was Sufficient Evidence of Assault On A Police Officer With A Deadly Weapon*

Defendant next contends there is insufficient evidence of assault on a police officer with a deadly weapon. In a sufficiency of the evidence challenge, the appellate court " 'must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' " (*In re V.V.* (2011) 51 Cal.4th 1020, 1026, original italics.) Every fact that could have been reasonably deduced from the evidence in favor of the judgment must be presumed to support the judgment. (*Ibid.*)

The trial court concluded that defendant threw the crowbar at Officer Stevenson. Defendant does not argue that throwing a crowbar at a victim does not constitute assault with a deadly weapon. (Cf. *People v. Garcia* (1984) 159 Cal.App.3d 781, 784 [defendant convicted of assault with a deadly weapon for throwing a tire iron at a police officer].) Defendant argues, however, that the evidence is insufficient that he actually threw the crowbar *at* Officer Stevenson, rather than simply disposing of the crowbar.

8

This consists of two arguments. First, defendant argues that Officer Stevenson was not, in fact, running to defendant's right, where the crowbar was found. However, Officer Stevenson testified that he was 10-15 feet away from defendant, to his right and slightly behind him, when defendant threw the crowbar towards him. This testimony constitutes sufficient evidence. Defendant argues that Officer Stevenson's testimony should not be believed, because it is "highly dubious" that Officer Stevenson was, in fact, to defendant's *right* (where the crowbar indisputably fell) when chasing defendant. We disagree; there is no reason to disbelieve Officer Stevenson, who clearly testified that defendant was running on the sidewalk and he was to defendant's right, in the street.[9] Second, defendant argues that it is mere speculation that he threw the crowbar *at* the officer. On the contrary, Officer Stevenson saw defendant extend his arm to the right side of his body and make a throwing motion, while looking to his right, where Officer Stevenson was running. This is sufficient evidence from which the court could determine that defendant intended to throw the crowbar at Officer Stevenson.

       3.     *Defendant's Maximum Term of Confinement was Improperly Calculated*

When a minor is removed from parental custody as the result of an order of wardship, "the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought . . . the minor under the jurisdiction of the juvenile court." (Welf. & Inst. Code, § 726, subd. (d).) Here, the court identified defendant's maximum term of confinement as seven years. The record does not indicate the manner in which the court calculated that number, but, as the prosecutor concedes, it is erroneous. Defendant's maximum term should be calculated as follows: the principal term is the maximum term of five years for assault on a police officer with a deadly weapon (Pen. Code, § 245, subd. (c)), with

---

[9]     Defendant suggests that this was unlikely because, shortly thereafter, defendant appeared to consider crossing the street to his right – something he would not have done if Officer Stevenson was, in fact, to his right. Yet defendant did not, in fact, cross the street. It may well be that he slowed because he saw his friends escape to his right, and realized he could not follow without crossing directly into Officer Stevenson's path.

9

possible consecutive terms of eight months (one-third the midterm) for each of the remaining two offenses. (Pen. Code, §§ 1170.1, subd. (a), 461, subd. (b), 69, 1170, subd. (h).) The issue arises, however, as to whether consecutive terms may be imposed for assault on a police officer with a deadly weapon and resisting an officer by force or violence.

Penal Code section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "The prohibition on multiple punishments in section 654 extends to a single act or an indivisible course of conduct. [Citation.] ' " . . . Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." ' [Citation.] [¶] 'If [a defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People v. Leonard* (2014) 228 Cal.App.4th 465, 498-499.)

Defendant argues that Penal Code section 654 prohibits consecutive terms for assault on a police officer with a deadly weapon and resisting an officer by force or violence, because both crimes – even if based on the different acts of throwing the crowbar and striking the officer with the bag – were part of an indivisible course of conduct with the single objective of avoiding arrest.

The prosecution suggests that the trial court could reasonably conclude that, in fact, two different criminal objectives were involved. The prosecutor theorizes that the defendant threw the crowbar at Officer Stevenson with the intent to avoid arrest, but, after the attempt had failed and his arrest was a certainty, defendant then swung the bag at Officer Stevenson's knees as an act of gratuitous violence intended only to injure the

10

officer. We disagree. Preliminarily, the prosecution's scenario assumes that the act of resisting arrest was the throwing of the crowbar and the act of assaulting an officer with a deadly weapon was the striking with the bag, yet the prosecution specifically presented the case to the juvenile court on the basis that *either* act constituted the assault.[10] Moreover, the prosecution argues that the court impliedly concluded that defendant's flight had ceased by the time of the assault (with the bag), and that it "was clear that the pursuit had ended and that [defendant] would not escape." We see no such evidence. Defendant struck Officer Stevenson's knees with the bag in a clear attempt to disable the officer's approach. The prosecution would infer that if defendant's attack on Officer Stevenson had successfully hobbled Officer Stevenson, defendant would nonetheless have remained where he stood, and offered himself to the officer for arrest. There is no evidence that this was the case. Both acts were performed with the intent of evading the officer; Penal Code section 654 therefore prohibits a sentence for the crime of resisting arrest.

In sum, defendant's maximum term of confinement should be calculated as five years for the assault on a police officer with a deadly weapon, and a consecutive eight months for the burglary.

---

[10] If the act of throwing the crowbar constituted the assault, both acts were indisputably performed with the intent of avoiding arrest.

11

*DISPOSITION*

Defendant's maximum term of confinement is modified from seven years to five years and eight months. As modified, the judgment is affirmed.

*NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

LAVIN, J.*

WE CONCUR:

KITCHING, Acting P. J.

ALDRICH, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.